SETH GINSBERG
ATTORNEY AT LAW

September 22, 2009


Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     *United States v. Baudanza, et. al*, **08 Cr. 97 (BMC)**

Dear Judge Cogan:

        With respect to John Baudanza, the government concludes its letter, dated September 16, 2009, with an affirmation of its intention to adhere to the terms of Baudanza's plea agreement. Letter from A.U.S.A. Jeffrey Goldberg to the Hon. Brian M. Cogan, dated September 16, 2009, ("Gov. Ltr.") at 13.  In route to that conclusion, however, the government made a number of inaccurate statements—including its erroneous claim that Baudanza violated the terms of his plea agreement—that require correction.

        Baudanza did not violate the terms his plea agreement, and the government's selective quotation from our letter to make it appear otherwise is misleading.  Contrary to the government's assertion, Baudanza did not "argue against an intended loss enhancement."  Gov. Ltr. at 2.  The sentencing range contained in Baudanza's plea agreement is 27-33 months, which is based upon a 14-point offense level increase for intended loss.  In our letter to the Court, Baudanza expressly requested a fully concurrent 27-month sentence, which represents the low end of the stipulated Guidelines range contained in his plea agreement and can only be based upon the 14-level increase that the government incorrectly claims we challenged.  *See* Letter from Seth Ginsberg to the Hon. Brian M. Cogan, dated September 8, 2009, ("Baudanza Ltr."), at 1, 7, 10 ("[O]ur request is for a 27-month sentence—which is the low end of the stipulated range—that runs concurrently with Baudanza's undischarged term of imprisonment."  *Id*. at 7).

        The fact that the plea agreement prohibits Baudanza from challenging the stipulated Guidelines range does not bestow upon the government the unfettered right to justify that range with an unsound rationale.  The fact that the government, in our view, chose to do so requires that we correct the record lest the Court be left with an inaccurate impression of the nature of the offense.  Thus, despite the government's claim to the contrary, Baudanza has not violated the plea agreement by challenging the validity of the government's rationale for the offense level increase because he has not challenged the increase itself.

Honorable Brian M. Cogan
September 22, 2009
Page 2 of 3

Moreover, because in its September 16 letter the government raised additional arguments to support its position, we must once again respond. As set forth in our letter, dated September 8, 2009, the government (a) charged Baudanza with bank fraud (not a fraud upon the government); (b) identified the victim in the indictment as Washington Mutual Bank; and (c) consented to Baudanza's plea allocution in which he stated that he understood that his conduct could potentially have caused a loss to the bank. Nonetheless, because Probation challenged that rationale, the government invented the alternative theory that the loss was based upon an intention to cause harm to the government. Its position is untenable. Furthermore, contrary to the government's statement, Baudanza did not "expressly concede[]" that he intended to cause "pecuniary harm to the government." Gov. Ltr. at 4.

In fact, the sale of Baudanza's home did not and could not have caused pecuniary harm to the government. The government does not now nor did it ever have any legal interest in Baudanza's home. The fact that Baudanza may have believed that the government might unjustly seek to encumber his home and took steps to prevent that from happening does not constitute a crime. If the government had had a legal interest in the home at the time that Baudanza sold it, the matter would be different, but such was not the case.

Additionally, even after the government indicted Baudanza in the prior case (the sale predated that indictment), the government identified the home only as a substitute asset. Consequently, even post-indictment, had he not yet sold the home, Baudanza would have been free to sell it to whomever he chose without committing any fraud upon the government because the law is well settled that the government may not restrain substitute assets prior to conviction. The government, however, insists upon ignoring these facts and instead persists with its indefensible claim that Baudanza should be punished for attempting to defraud the government—something that he did not do and which, therefore, should have no role in the determination of his sentence.

As regards the government's challenge to our argument that Baudanza should receive a fully concurrent sentence, there are also some matters that we must address. The government maintains that as of the time that Victor Sperber testified in the grand jury about the sale of the home, "the government had not yet developed sufficient evidence to charge Baudanza with bank fraud conspiracy." Gov. Ltr. at 11. However, though the government claims that "the *primary* purpose of Sperber's grand jury testimony was to determine whether Baudanza's house could be forfeitable as a substitute asset," the government does not deny that bank fraud charges were also the subject of that grand jury investigation. Gov. Ltr. at 11 (emphasis supplied). Indeed, the government's examination of Sperber leaves little doubt that it intended to charge Baudanza with bank fraud given that it established that Baudanza selected the mortgage broker for the transaction and that the mortgage broker that Baudanza hired made false statements regarding the purpose of the sale in the loan documents. The fact that Sperber "did not reveal the true purpose" of the transaction, Gov. Ltr. at 11, is not determinative of whether Baudanza committed bank fraud. Thus, from our vantage point it appears that the government has no more evidence of bank fraud now than it did at the time of the prior indictment.

Honorable Brian M. Cogan
September 22, 2009
Page 3 of 3

Finally, with respect to Baudanza's criminal history, we note that the cases on which the government relies are all from a time when the Guidelines were mandatory and deal with the standard necessary to impose a downward departure.  Those strictures no longer apply and in determining whether to impose a concurrent sentence the Court is free to consider the fact that the timing of the two cases has increased Baudanza's Criminal History category.

Accordingly, as stated in our initial sentencing letter, in compliance with the terms of the plea agreement, Baudanza seeks a sentence at the low end of the stipulated Guidelines range that runs fully concurrent with the undischarged term of imprisonment he is currently serving.

Respectfully,


_____/s/_____
Seth Ginsberg

cc:     All Counsel